|   |   |
|---|---|
| 6 | 193 |
| 47 | 109 |
| 6 | 193 |
| 115 | 872 |

# WILLIAM A. VIOLETT et al. *v.* C. H. FAIRCHILD et al.

Every change in the owners of a boat, while she is engaged in carrying passengers and merchandize for hire, dissolves the existing partnership and creates a new one. A retiring partner remains bound for debts already contracted, but cannot be made responsible for new debts.

The partnership created between the owners of a vessel engaged in commerce, is one only as to the use of the vessel, the ownership remaining with the individual partners, subject to the privileges in favor of the creditors of the partnership.

Where one brother sold his interest in a steamboat to another brother, who was merely a clerk destitute of means, without the ability to have made the cash payment acknowledged to have been received, and the vendor remained in possession, it will be presumed that the sale was simulated.

Where one of the owners of a steamboat sells out his interest, he will be entitled to the vendor's privilege on the share thus sold, after the privileged debts against the boat are paid off.

A revocatory action to annul a proceeding upon the ground of a fraudulent preference given to a creditor, cannot be tried in the form of an opposition to a distribution of a fund. On such an issue, the parties have a right to a trial by jury.

Parties who sell supplies to a steamboat on time longer than sixty days virtually abandon their privilege, and will be regarded as ordinary creditors.

25

VIOLETT
*v.*
FAIRCHILD.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Watts* and *Spring*, for appellees. *Benjamin* and *Micou*, *Wolfe* and *Singleton*, *Kendall* and *Howard*, *C. Dufour*, *H. St. Paul*, *Durant* and *Hornor*, for appellants, The judgment of the court was pronounced by

ROST, J. This is an appeal by *Horace Conduit*, *Jesse Hart* and *Joseph D. Foster* from a judgment distributing the proceeds of the steamer Luna, among the creditors of the commercial firms which had in succession used the boat for the transportation of persons and merchandise for hire ; and we must here premise, that in styling the different sets of persons who thus used that vessel *commercial partners*, we mean only that they should be viewed in that light for the purposes of this suit.

The district judge applied the fund as follows : 1. To the payment of law charges, and of privileged claims for supplies furnished the boat, within the sixty days which preceded the seizure. 2. To the payment of ordinary claims for supplies, which had lost their privilege, but were held by persons who had not at any time been owners of the boat. The amount of these ordinary claims far exceeds the sum left after payment of the privileges.

The appellants do not object to the judgment, so far as it decrees the payment by preference of law charges and privileged claims. But they claim the preference over the creditors having no privilege.

*C. H. Fairchild*, *Warring*, *Hart* and *Conduit* built the steamboat Luna, and were joint owners of her. On the 15th of May, 1848, *Hart* sold his fourth interest to *C. H. Fairchild*, for five thousand dollars, of which fifteen hundred dollars were paid in cash, and the remainder in three notes, each of $1166 66⅔.

By a private written agreement between *Hart* and *C. H. Fairchild*, it was provided that judgment should be confessed in favor of *Hart*, in case of non-payment at maturity of the notes given to him for the price, and *A. H. Donaldson* was appointed attorney to confess judgment in such event.

On the 2d of December, 1848, *Conduit* sold his fourth interest to *Fairchild*, taking in payment therefor four notes for the sum of $1125 each, payable from 2d March to 2d December, 1849. The only payment made on these notes was a sum of $600 paid on the first note.

On the 6th of January, 1849, *C. H. Fairchild* executed an act of sale of seven-eighths of the boat—this being his entire interest—to his brother, *E. H. Fairchild*, for the alleged consideration of $10,000 cash. This sale is alleged by *Conduit* to be simulated.

On the 24th day of February, 1849, *E. H. Fairchild* executed an act of sale to *Joseph D. Foster*, of one-fourth of the boat, for the sum of $3500, which was paid in cash.

On the 3d of March, 1849, *E. H. Fairchild*, having become the apparent owner of the entire boat, bound himself jointly and severally with *C. H. Fairchild*, for a faithful compliance with all the obligations of the latter as purchaser of *Jesse Hart's* interest.

On the 4th of June, 1849, *Hart* brought this suit for the recovery of $2764 57, being the balance of the price due him, against *C. H.* and *E. H. Fairchild*, who both appeared and confessed judgment. Under this judgment the steamboat was seized and sold on the 20th of September, 1849, for $10,025. This fund is now in the hands of the sheriff, and, in conformity with a usage established in such cases by the late Commercial Court and not objected to, the creditors of the part owners of the boat, and those of the successive firms who have used it in

the transportation of persons and merchandise for hire, ask that it be distributed among them according to their rank and privileges.

The district judge was of opinion that the business of carrying freight and passengers in a vessel being a commercial business, the vessel, with her appurtenances, should be considered as the capital stock, so far, at least, as creditors are concerned; that all persons interested in the ownership of the vessel are, as to all other persons with whom contracts are made in the prosecution of the business, commercial partners; and that, accordingly, although each of the parties interested may withdraw from the partnership by selling his interest to a third person, when the transfer shall have been made by sale upon a credit, the vendor will not be the creditor of the partnership, but only of his vendee; and the privilege of vendor in such a case will not apply to the whole vessel, but only to the share owned by the transferree. And he concluded from this that all those who had furnished supplies to the boat, whether within the sixty days preceding the seizure or previously, were to be considered as creditors of the commercial partnership implied by law, from the trade in which the boat was engaged; and that they must be paid before those claimants who are holders of notes given by part owners in payment of shares purchased in the boat.

We cannot assent to this proposition. Every change in the partners while the boat is engaged in carrying persons and merchandise for hire, dissolves the existing partnership and creates a new one. The party selling continues, undoubtedly, bound for all the debts of the old partnership, whether or not they have lost their privilege, and ought not to be permitted to share the proceeds of the boat with his creditors. But he cannot be held responsible for debts contracted after he ceased to be a partner, and his claim for the price of the share sold cannot be defeated by them.

The case of *Claiborne et al.* v. *Their Creditors*, relied on by the appellees, presents a state of facts entirely different from those of this case. There, three persons were joint owners of a steamboat, which they used for the transportation of persons and merchandise for hire. The partnership thus formed between them was much in debt when the boat was destroyed by fire. Two of the partners failed, and surrendered to their creditors the policies of insurance of the boat. *Lefléchier*, the partner who had not failed, subsequently claimed his share of the insurance. The court considered this a demand for a partition and settlement of the partnership concerns, and held that no part of the fund could go into the hands of *Lefléchier* until the partnership debts were paid. The question whether the fund in hand was a partnership fund or the joint property of the partners, was not raised in argument. It was not before the court; and the casual observation of the court, that it was a partnership fund, did not decide the question. It was enough for the purposes of that case that the fund was liable for the partnership debts. 13 L. R. 279.

We adhere to the rule laid down in the case of *Byrne* v. *Harper*, 2 R. R. 229, that when owners of a steamboat use it to carry persons and merchandise, the use of the boat only is brought into the partnership, unless there is an express stipulation to the contrary, and that as it may be enjoyed without being destroyed, the ownership remains in the partners individually, under art. 2834 of the Civil Code, subject to the privileges which the law allows in such cases to the creditors of the partnership.

Under this view of the law, it becomes necessary to ascertain who the real partners were. A careful perusal of the evidence has satisfied us that the sale

VIOLETT
v.
FAIRCHILD.

from *C. H. Fairchild* to *E. H. Fairchild* was a simulation: a mere shadow cast upon the title of the vendor to delay the pursuit of his creditors, and so far as it was in his power, to defeat their claims. There was no change of possession under the sale; the vendor continued to manage the boat and to receive the profits. At the time of the sale, *E. H. Fairchild* was a store clerk, entirely destitute of means and unable to pay any portion of the price which his brother has acknowledged he received from him. There is no reality in this transaction; and in distributing the fund we will consider the ownership of *C. H. Fairchild* as never having been interrupted, except by the sale of one-fourth made to *Foster.*

*Hart* claims to be paid by preference, on the ground that the boat was seized and sold under his execution, and that the seizure gave him a privilege.

The other creditors contend that his judgment was obtained on the confession of *C. H.* and *E. H. Fairchild;* that these defendants were insolvent at the time to the knowledge of *Hart,* and could waive none of their legal rights to the prejudice of their creditors; that by doing so, they gave an unjust preference to this creditor over the others. They also urge that a judgment obtained on the confession of the defendant, is only evidence of a contract, and that the seizure made under such a judgment does not create a privilege.

The confession of judgment was expressly stipulated in the contract, and it is surely no objection to it, that instead of being made by the agent whom the parties had designated, it was made by the debtor himself. There was nothing hurried or suspicious in the proceeding. *Hart* suffered four months to elapse after his debt was due before he brought suit and called upon *Fairchild* to execute his promise. It may be, that he knew that the sale to *E. H. Fairchild* was simulated. But as he could not prevent its being passed, it cannot affect his rights. If *C. H. Fairchild* was insolvent, the creditors who now complain were guilty of great negligence in suffering their privilege to expire by lapse of time, instead of bringing suit to enforce it. Their loss arises exclusively from this omission. But besides, if it be true that, by confessing judgment, the defendants enabled *Hart* to obtain an unjust preference over the other creditors, the latter should have brought a revocatory action for the purpose of setting aside the judgment. This ground involves a question of fraud which should have been tried before a jury, and which *Hart* ought not to be compelled to litigate in this summary proceeding.

The seizure having been made under a valid and subsisting judgment, necessarily created a privilege in favor of the seizing creditor, whatever may have been the nature of the evidence upon which the judgment was obtained.

*Conduit* also claims a privilege, on the ground that when the boat was sold sixty days had not elapsed since the maturity of any of the notes which he received in payment from *C. H. Fairchild.* We think this ground untenable. The privilege was created by the contract and expired sixty days after its date. *Conduit,* in selling on time, virtually abandoned the privilege and dealt exclusively upon the credit of *Fairchild,* as the other creditors did who suffered the sixty days to expire without enforcing their claims. They are all in the same situation.

We are therefore of opinion that the fund should be distributed as follows: 1. The amount of privileged debts must first be deducted from the proceeds of the sale. 2. The fourth of the balance must be set apart as the share of *Foster.* 3. Out of the other three-fourths, the amount due *Jesse Hart* must

first be deducted, and the balance divided *pro rata* between *Conduit* and the other creditors, it being well understood that after the dividend to which *Conduit* and the ordinary creditors are entitled is ascertained, the creditors of the firm of *Fairchild, Warren, Hart* and *Conduit*, which continued until the 15th May, 1848, shall be entitled to receive out of the share of *Hart*, the amounts respectively due them by that firm. That the creditors of the firm of *Fairchild, Warren* and *Conduit*, which continued from the 15th May, 1848, to the 2d of December, 1848, shall, in like manner, after the dividend is ascertained, receive out of the dividend coming to *Horace Conduit* up to its full amount and *pro rata* in case of deficiency, the amounts respectively due them over and above their dividends, and that, in this distribution of *Conduit's* dividend, *Hart* shall be classed as his creditor for one-half of the debts of the firm of *Fairchild, Warren, Hart* and *Conduit*, which he is adjudged to pay. That the creditors of the firm of *Fairchild* and *Foster*, which lasted from the 24th of February, 1849, until the boat was sold, shall, in like manner, receive out of the share of *Foster*, the amount of their respective claims.

We consider that portion of the judgment which allows the privileged claims to be correct, except so far as allows a privilege to *William B. Scott* for $338. This claim must be classed as an ordinary claim, the privilege having been lost by lapse of time.

*John Muir* asks that the judgment in his favor be increased, so as to allow him a privilege for his entire claim. We are satisfied that there is no error to his prejudice in the judgment, so far as it settles his claim; and as it is not contested by the appellants, we leave it undisturbed.

The tableau annexed to and made a part of this opinion, shows the distribution of the fund in conformity with the view taken by the court of the rights of the parties.

It is therefore ordered, that the judgment in this case be reversed. It is further ordered, that the fund in the hands of the sheriff be distributed in conformity with the tableau annexed to and made a part of the opinion of the court.

---

Distribution of the funds in the case of *W. A. Violett & Co.* v. *C. H. Fairchild et al.*, owners of steamboat Luna, &c.

| | | |
|---|---:|---:|
| Amount price of boat, | | $10,025 00 |
| Costs of Supreme Court, .......$ 28 80 | | |
| "     " Clerk District Court.... 414 20 | | |
| "     " Sheriff, ................. 508 00 | 951 00 | |
| | | 9074 00 |

PRIVILEGED CLAIMS.

| | | |
|---|---:|---:|
| Amounts as per judgment court below, ..............$3481 96 | | |
| Add as per amended judgment for *John Muir* and | | |
| Insurance Company, ............................ 225 47 | | |
| | $3707 43 | |
| Deduct claim of *William B. Scott*, now ranked as | | |
| ordinary creditor, ................................ 338 00 | 3369 43 | |
| | | 5704 57 |
| Of which one-quarter for *Foster*, ...................$1426 14 | | |
| "     " three-quarters for *Fairchild*, .............. 4278 43 | $ 5704 57 | |

VIOLETT
*v.*
FAIRCHILD.

DISTRIBUTION OF FAIRCHILD'S SHARE.

| | |
|---|---:|
| Amount his share, | 4278 43 |
| For *Jesse Hart,* | 2764 51 |
| Balance for division, | $ 1513 92 |

| | | |
|---|---:|---:|
| Amount or ordinary claims, as per judgment of court below, | $8480 23 | |
| Add claim of *William B. Scott,* | 338 00 | |
| " claim of *Conduit,* | $4500 | |
| Less paid on account, | 600 | 3900 00 |
| Total ordinary claims, | $ 1278 23 | |

So that *Fairchild's* share pays a dividend of $11 90 per $100, to the ordinary creditors.

*Conduit's* dividend on $3900 amounts to $464 10, none of the claims of the creditors bear date prior to the 15th May, 1848, so that no contribution is due by *Jesse Hart* towards the creditors under the decree.

DISTRIBUTION OF THE DIVIDEND OF CONDUIT.

Amount of dividend to *Conduit,* ....$464 10

List of the creditors of the firm of *Fairchild, Warren* and *Conduit,* which existed from the 15th May, 1848, to 2d December, 1848.

| | |
|---|---:|
| *William A. Violett & Co.* | $ 345 06 |
| *Stanton & Co.* | 383 95 |
| *William B. Scott,* | 338 00 |
| *Leeds & Co.* | 719 00 |
| *F. F. Folger & Co.* | 1191 08 |
| *Desmarais,* | 2041 00 |
| | $ 5018 09 |

Dividend to the above creditors on *Conduit's* share is $9 25 per $100.

Creditors to be paid by *Foster,* as creditors of partnership of *Fairchild* and *Foster,* from 24th February, 1849, till sale of boat.

| | | |
|---|---:|---:|
| *W. A. Violett & Co.* | $874 79 | |
| Less amount received by privilege, | 398 69 | |
| | 476 10 | |
| Less $11 90 per cent on this balance, received from *Fairchild's* share, | 56 66 | |
| | | $ 419 44 |
| *D. Felt & Co.* | 53 40 | |
| Less dividend of $11 90 per cent, | 6 35 | |
| | | 47 05 |
| *J. Carr, Jr.* | 413 58 | |
| Less amount received by privilege | 360 87 | |
| | 52 71 | |
| Less $11 90 per cent, | 6 27 | |
| | | 46 44 |
| *Long & Maglone,* | 65 63 | |
| Less received by privilege, | 4 50 | |
| | 61 13 | |
| Carried forward, | 61 13 | 512 93 |

| | | | |
|---|---:|---:|---|
| Brought forward,........................... | 61 13 | 512 93 | VIOLETT |
| Less $11 90 per cent,........................ | 7 26 | | *v.* |
| | | 53 87 | FAIRCHILD. |
| *Numa Lacoste,*.............................. | 117 90 | | |
| Less received by privilege,................... | 76 20 | | |
| | 41 70 | | |
| Less $11 90 per cent,........................ | 4 96 | 36 74 | |
| *Chittenden* and *Dameron,*.................. | 49 93 | | |
| Less received by privilege,................... | 40 | | |
| | 49 53 | | |
| Less $11 90 per cent,........................ | 5 89 | | |
| | | 43 64 | |
| *John Cottle,*................................ | 157 02 | | |
| Less received by privilege,................... | 68 34 | | |
| | 88 68 | | |
| Less $11 90 per cent,........................ | 10 55 | | |
| | | 78 13 | |
| *F. F. Folger & Co.*.......................... | 113 99 | | |
| Less $11 90 per cent,........................ | 13 57 | 100 42 | |
| | | $825 73 | |
| Balance for *Foster,*......................... | | 600 41 | |
| | | $ 1426 14 | |

RECAPITULATION.

| | | |
|---|---:|---:|
| Total proceeds of boat,............................... | | $10,025 00 |
| Costs,................................. | $ 951 00 | |
| Privileged claims,.................................... | 3369 43 | |
| *Jesse Hart,*...................................... | 2764 51 | |
| Creditors of *Fairchild,*............$1513 92 | | |
| Less dividend of *Conduit,*........... 464 10 | 1049 82 | |
| Creditors of *Conduit,* as per list,.................... | 464 10 | |
| Creditors of *Foster,* as per list,..................... | 825 73 | |
| *Joseph D. Foster,*................................. | 600 41 | $10,025 00 |