(102 So. 16)

No. 26629.

## POSNER v. LITTLE PINE LUMBER CO. et al.

## In re GEORGE C. VAUGHAN & SONS, Inc.

(Nov. 3, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Partnership ⬤⟹95 — Partner's sale of interest in unliquidated partnership creates no vendor's lien.**

One partner's sale of his interest in unliquidated partnership is not sale of specific property or interest therein, and hence creates no vendor's lien.

**2. Partnership ⬤⟹264—Partner's sale of interest to copartner does not dissolve and liquidate partnership.**

Partner's disposal of interest to copartners is not sale of interest in specific property, and does not operate as dissolution and liquidation of partnership.

**3. Partnership ⬤⟹95—Partner's sale of interest to copartners held sale of unliquidated interest in unliquidated partnership.**

Partner's sale to copartners of interest in partnership, owning property worth enough to secure loan of $36,000, for $1,700, and vendees' assumption of debts, *held* sale of unliquidated interest in unliquidated partnership, so that note evidencing deferred payment on purchase price was not secured by vendor's lien on specific articles or pieces of partnership property.

**4. Partnership ⬤⟹236—Sale of interest to copartner does not relieve seller of obligations to creditors.**

Partner's sale of his interest to copartners does not relieve him of obligations to partnership creditors.

**5. Partnership ⬤⟹95—Payment of debts, after sale of interest to copartners, immaterial on question of creation of vendor's lien.**

That partnership debts were paid, after partner's sale of interest to copartners, from proceeds of mortgages executed to creditor, is immaterial on question of creation of vendor's lien securing note for deferred payment on purchase price; question of such lien vel non being determinable as of time of sale.

**6. Partnership ⬤⟹178—Debts must be paid before division of property by partners.**

Assets of partnership belong to no partner separately, but are common stock pledged for partnership debts, which must be paid before division of property by partners.

Certiorari to Court of Appeal, Second Circuit.

Action by Isaac Posner against the Little Pine Lumber Company and others, in which George C. Vaughan & Sons, Inc., filed third opposition. Judgment for plaintiff was affirmed by the Court of Appeal, and third opponent applies for certiorari or writ of review. Judgments set aside, and judgment for third opponent ordered.

Hakenyos & Scott, of Alexandria, for applicant.

Blackman & Overton, of Alexandria, opposed.

By the WHOLE COURT.

ROGERS, J. This is a contest over the distribution of a fund in the hands of the sheriff of the parish of Rapides.

On February 4, 1920, J. D. Colbert, a member of the partnership known as the Little Pine Lumber Company, sold his entire undivided interest in and to the partnership to the remaining partners, L. R. Baker and J. W. Stell. The consideration of this sale, which was by notarial act, was $1,700, of which amount $1,000 was paid partly in cash and partly in its equivalent, and for the balance of the purchase price the purchasers executed two notes of $300 and $400 respectively. The note of $300 was paid. Plaintiff became the owner of the note for $400.

The notes evidencing the credit portion of the said sale were identified by the notary with the act of sale, which, among other stipulations, contained the following:

"It is declared by the parties that this purchase of Colbert covers and includes his interest in all of the property of the said partner-

ship, whether specifically described herein or not.

"It is further stipulated by the parties that, in further consideration of the sale by the vendor of his interest in said partnership, the said Baker and Stell assume all liabilities of the Little Pine Lumber Company, and release the said Colbert from all responsibility therefor."

The real estate and the most valuable portion of the personal property owned by the partnership was described in the act of sale, which was recorded in the conveyance records, but not in the mortgage records, of the parish of Grant, where the property was situated.

Plaintiff, as the owner of the note for $400, brought suit against the makers to recover the amount thereof, and for the recognition and enforcement his vendor's lien and privilege on the "undivided one-third interest of J. D. Colbert in and to the partnership of the Little Pine Lumber Company, and particularly in and to the following described property" (here followed a description of the property).

Attached to the petition was defendant's confession of judgment, waiver of citation, and legal delays for answering, and consent to the jurisdiction of the district court for the parish of Rapides. On the day the petition was filed judgment was rendered in favor of plaintiff as prayed for.

Subsequently, George C. Vaughan & Sons, Inc., claiming to hold a conventional mortgage and a chattel mortgage upon the partnership property, to secure an indebtedness of $36,000, filed a third opposition, and, for various reasons set forth in the opposition, prayed that its mortgages be decreed to prime the vendor's privilege claimed by plaintiff, and that they be granted preference on the proceeds of the sale of the property.

The district court rejected the demand of the third opponent, and ordered the fund in the hands of the sheriff to be paid over to the plaintiff. This judgment was affirmed by the Court of Appeal for the Second Circuit, and the case, upon the application of third opponent, is now before us for review.

In support of its opposition, third opponent is relying upon only two of the grounds alleged therein. These grounds are:

First, that the deed from Colbert shows on its face that it is a sale of the undivided interest in an unliquidated partnership, which does not create, in law, a vendor's lien on specific articles of partnership property to secure the deferred portion of the purchase price of the sale of such interest; and

Second, that the said act of sale, never having been recorded in the mortgage records of the parish of Grant, is ineffective to preserve a vendor's lien on the property described therein to the prejudice of opponent's rights as a mortgage creditor on said property.

It is unnecessary for us to pass upon the second ground, since, in our opinion, the first ground relied upon by the third opponent is sufficient to grant the relief sought in its opposition.

[1] The Court of Appeal, in the two opinions which it delivered in this case, one on the original hearing and the other on rehearing, admits the correctness of the legal principle that the sale by one of the partners of his interest in an unliquidated partnership is not a sale of specific property or of any interest in specific property, and that, therefore, no vendor's lien can be created by such a transaction. It holds, however, that the act of sale from Colbert to Baker and Stell evidenced a dissolution of the partnership and a liquidation of its affairs, and that the sale by Colbert of his undivided one-third interest in the partnership property was not the sale of an unliquidated interest in an unliquidated partnership.

[2] If the position assumed by the Court of Appeal be legally correct, then every time one partner disposed of his interest in a partnership to his copartners it would con-

stitute a sale of an interest in specific property, and operate as a dissolution and liquidation of the partnership. Such is not the law.

[3] The Court of Appeal concedes that there is no evidence in the record showing that the partners made up a statement of the partnership affairs, setting forth its assets and liabilities, and showing the net share due each of the partners. It based its opinion that a liquidation had taken place "upon conclusions," says the court—

"Which we drew from facts which were admitted, or else fully established by the record rather than from any direct evidence on the point."

And the court said further:

"The real trouble we encountered was because of the absence of positive evidence of what was done or intended to be done by the parties to the sale of Colbert's interest."

The act of sale, however, is unambiguous. The vendor therein, in express terms, sold his undivided interest in and to the partnership known as the "Little Pine Lumber Company" and consisting more particularly of the property which is then described. The deed, on its face, establishes the fact that the partnership was unliquidated, because the vendees therein assumed the payment of the debts of the partnership.

The Court of Appeal in its reasoning, by means of which it reached the conclusion that there must have been a settlement among the partners and a liquidation of the partnership affairs, uses the following language:

" * * * Colbert and his two partners owned equal interests in the partnership, Colbert sold his one-third interest to his copartners for $1,700, and they assumed the debts of the business. The net value of the property was therefore $5,100. Now, the total value of the property must have been largely in excess of this last amount, because the day of the sale intervenors loaned Stell and Baker, Colbert's vendees, $14,000 on the whole property, and a few months later increased this loan by $22,-000. It was impossible for the partners to arrive at a net value which each owned in the property, unless they cast up accounts of assets and liabilities. * * * In short, we think that the sale from Colbert to his two partners was in itself a liquidation and settlement of the partnership."

[4] If inferences are to be indulged in, then we are confronted by another and perhaps stronger inference than the one which influenced the Court of Appeal in reaching its conclusion. It is patent that Colbert would not for $1,700 have sold his interest in the partnership owning property, which was of sufficient value to secure a loan of $36,000, unless the partnership was heavily involved in debt. These debts, as part of the consideration for the sale, were assumed by the vendees. The fact that the vendees were willing to purchase the interest of their partner and assume the debts indicates that for reasons of their own they were desirous of having their partner retire from the firm. Certainly it was not necessary for Colbert to sell his interest in order that the partnership might borrow the money from the third opponent, since the partnership property was mortgaged to secure said indebtedness, and the loan could have been effected as easily with Colbert retaining his interest in the partnership as it was subsequently effected after he had retired therefrom. The fact that Colbert received $1,700 for his interest in the partnership cannot be considered as determining his interest in each specific piece of property owned by the partnership. It amounts to nothing more than the tangible expression on the part of his partners of the sum they were willing to pay to have him retire from the business. Non constat if the partnership had been liquidated at the time of the sale, it would have proven to be insolvent, and Colbert would have had no interest whatever therein. Again, the sale by Colbert to his vendees did not relieve him, so far as the partnership creditors were concerned, of his obligations to them.

[5] It is immaterial if the partnership debts were paid after the sale from the proceeds of the mortgages executed in favor of opponent. The question of the vendor's lien, vel non, must be determined as of the time of the sale. At that date neither Colbert nor his partners owned any fixed interest in the partnership property which was incumbered with debts. They only owned the residuum, whatever that might be, after the payment of the debts.

In Gridley v. Conner, 2 La. Ann. at page 90, this court said:

"Our own Code makes provisions for cases of this kind [liquidation of partnerships]. The rules concerning the partition of inheritances, the manner of making them, and the obligations which result between heirs, apply to partners. Civil Code, art. 2861.

"The first step to be taken towards the completion of a partition is the settlement of the amount which each of the heirs owes the succession, and of the amount which he is bound to collate; and where there is to be a final liquidation and settlement of a succession or partnership, it is obvious that the result cannot be effected without a payment of the debts, or, in a succession, by a division of the debts among the heirs.

*"The debts due by commercial partnerships are indivisible, as the partners are bound in solido; the debts must therefore be paid.* * * *

"When the creditors shall have been paid, it will be his [liquidating partner's] duty to divide the residue, if any remain, among the partners under the direction of the court, in accordance with the articles of partnership, and their respective interests in the fund." (Writer's italics.)

[6] On the legal proposition that the debts must be paid before the partners can divide the property, that the assets belong to no partner separately, but are a common stock pledged for the debts of the partnership, see Ward v. Brandt, 11 Mart. (O. S.) 331, 13 Am. Dec. 352; United States v. Baulos, 5 Mart. (N. S.) 567; Purdy v. Hood, 5 Mart. (N. S.) 626; Claiborne v. Their Creditors, 18 La. 501; Mourain v. Delamarre, 2 La. Ann. 142.

We quote the following from the Succession of Pilcher, 39 La. Ann. 362, 1 So. 929.

"A partnership once formed and put into action becomes, in contemplation of law, a moral being, distinct from the persons who compose it. * * * *The partners are not the owners of partnership property. It belongs to the ideal being* which has the control and administration thereof to enable it to fulfill its legal duties and obligations. *The partners own the residuum.*" (Writer's italics.)

See, also, Perry v. Holloway, 6 La. Ann. 265; and Liquidating Com'rs of Bank of Monroe v. Dodson, 131 La. 990, 60 So. 659, wherein this court said:

"The transfer by a partner of his half interest in assets belonging to a partnership is a transfer of his interest therein, as may appear on a settlement with his copartners."

It is our conclusion that the sale by Colbert to his copartners was the sale of an unliquidated interest in an unliquidated partnership, and that, therefore, plaintiff's note evidencing a deferred payment on the purchase price thereof is not secured by a vendor's lien on specific articles or pieces of partnership property.

For the reasons assigned, the judgments of the district court and of the Court of Appeal are annulled and set aside, and it is now ordered that there be judgment in favor of third opponent, George C. Vaughan & Sons, Inc., and against the Little Pine Lumber Company and the partners thereof, J. W. Stell and L. R. Baker, and against Isaac Posner, plaintiff herein, recognizing said third opponent as mortgagee of the said property described in the certified copies of the acts attached to the petition of intervention and third opposition, and that as such its rights as such mortgagee be recognized and enforced in preference and priority over the claims of all other persons whomsoever, and particularly the said Isaac Posner, rejecting the said Isaac Posner's demand for vendor's lien and privilege, and directing the sheriff of the parish of Rapides to pay over

to said George C. Vaughan & Sons, Inc., third opponent, the sum of $480.20 deposited in his hands, in accordance with the agreement of the parties and referred to in the petition of the third opponent, said amount to be credited on the mortgage indebtedness due to the said third opponent by the said Little Pine Lumber Company as shown by the acts, contracts, notes, and mortgages attached to the petition of said opponent. Plaintiff, Isaac Posner, to pay all costs.

OVERTON, J., recused.