Dear Mr. Reeves:
You recently wrote requesting an opinion regarding the repossession of motor vehicles. Specifically, you ask whether a seller of motor vehicles licensed under the Louisiana Sales Finance Act may repossess a vehicle without recording a lien with the Department of Motor Vehicles. The dealers believe that they have a contract of sale and a retail installment contract signed by the consumer, and therefore, they do not need the benefit of a lien.
The Louisiana Civil Code states that a sale is perfected between the parties when they agree on object and price, even though the object has not been delivered or the price paid. LSA-Civil Code Articles 2439
defines a sale as "a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale." LSA-Civil Code Article 2456 provides that "ownership is transferred between the parties as soon as there is an agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid."[1] Louisiana courts agree that "The three elements of a sale are thing, price and consent."[2]
The Certificate of Title Law found at LSA-R.S. 32:705 provides in part:
 A. No person shall sell a vehicle without delivery to the purchaser thereof, whether such purchaser be a dealer or otherwise, a certificate of title issued under this Chapter in the name of the seller with such signed endorsement of sale and assignment thereon as may be necessary to show title in the purchaser; provided:
 (2) A dealer who is reselling a vehicle that he purchased for stock purposes from an owner who, at the time of such purchase, delivered to the dealer an existing certificate of title issued under this Chapter in the name of such owner, properly endorsed, may, in lieu of applying for and obtaining a new certificate of title in his own, the dealer's name, and the delivery the same to the purchaser, instead execute a resale and reassignment of such existing certificate of title, with warranty of title.
Although the Certificate of Title law requires that a dealer deliver a title to a purchaser, the courts have held that failure to deliver a title does not vacate the sale.
Is the sale of an automobile complete when the parties agree on the object and price or is there an additional requirement of compliance with the Louisiana Certificate of Title Law? Louisiana courts have repeatedly held that the sale of an automobile is complete without compliance with the Louisiana Certificate of Title law. "The existing jurisprudence makes it clear that mere failure to comply with the title law does not void the sale of a motor vehicle. It only prevents the title from being marketable."[3]
The provisions of the Vehicle Certificate of Title Law, LSA-R.S. 37:701, et seq., do not supersede the aforesaid provisions of the Civil Code nor render the sale of a motor vehicle void because of noncompliance with the statute. The rule appears now well settled in this State that titles to motor vehicles, though imperfect, may be transferred between parties in accordance with the provisions of the Civil Code quoted above, even though there has been no compliance with the Vehicle Certificate of Title Law as the enactment of the law regulating the certificate of title to motor vehicles did not have the effect of repealing the provisions of the Civil Code having reference to the consummation of sales of motor vehicles between parties to such transactions.[4]
If a licensed vendor fails to transfer the title to the vendee, does he then have the authority to repossess the vehicle for nonpayment? The Louisiana Motor Vehicle Finance Act (LMVSFA)[5] provides for the terms and conditions governing the financing of a motor vehicle and the procedure for repossession after default. The "Additional Default Remedies Act" found at LSA-R.S 6:965 et seq. spells out the specific measures for seizing the collateral after default. LSA-R.S. 6:966 reads in part:
 C. Upon default the secured party shall have the right to obtain possession and dispose of the collateral in accordance with the provisions of Chapter 9 of the Louisiana Commercial Laws, R.S. 10:9-101
et seq., and to cause titled collateral to be retitled. For purposes of this chapter, the creditor shall send a notice to the debtor at his last known address by registered mail or certified mail, return receipt requested:
 (1) Demanding payment of all delinquent amounts together with finance charges as provided for in the secured indebtedness on or before a date not less than ten business days after such notice is sent.
 (2) Notifying the debtor that unless such payment is received the collateral may be seized for sale, as provided for in this Chapter.
 D. If the debtor fails to pay the secured indebtedness within the time set forth in the notice, the secured party may cause the debtor to be served with a petition to obtain possession and dispose of the collateral pursuant to Subsection C thereof to be adjudicated through a summary proceeding by a court of competent jurisdiction.
Nothing in the Act gives the licensed seller who finances an automobile the authority to seize a vehicle without following the proper procedures for repossession.
Louisiana courts have repeatedly held that a secured creditor may not resort to self-help when repossessing collateral. "Self-help in repossessing movables is not legally recognized in Louisiana. A person must go through legal means in order to repossess security for a loan, or to collect on an unpaid loan."[6] "The seller is not entitled to take re-possession of the movable without legal proceedings, despite the buyer's failure to pay an installment when due and despite any agreement that formal title will not pass until final payment".[7] The court recently reiterated its position on the matter.
 "Louisiana law does not provide a security holder with the right to engage in self-help. U-Haul Co. of S. Louisiana v. Lumzy, 405 So.2d 1099 (La.App 4 Cir. 1981). Although the Legislature has adopted Section 9 of the Uniform Commercial Code, covering secured transactions, this court has not found any special provisions that grant the security interest holder of movable property the right to unilaterally seize and privately sell such property without the consent of the debtor or notice and reasonable opportunity for him to seek legal redress. Even where the Legislature has enacted statutes which allow for private enforcement of certain liens, such as in the Self-Service Storage Act, La.R.S. 9:4796 et seq., it has required strict fair notice requirements and other safeguards to prevent fundamental unfairness in the creditor-debtor relationship.[8]
According to the Vehicle Certificate of Title Law, "A security interest covering a titled motor vehicle subject to this Chapter shall be perfected as of the time the financing statement is received by the Department of Public Safety and Corrections, so long as such receipt subsequently is validated by the secretary of the Department of Public Safety and Corrections."[9] In fact, the Second Circuit Court held that a properly recorded chattel mortgage on a trailer had priority over a prior chattel mortgage that had not been properly recorded and validated by the Department of Public Safety.[10]
Finally, LSA-R.S. 6:969.4 specifically prohibits a consumer from waiving any rights or benefits provided for by the Louisiana Motor Vehicle Sales Finance Act. Any such waiver would not be enforceable.
In conclusion, a motor vehicle dealer completes the sale of a vehicle when the seller and the buyer agree or come to terms on the object or automobile and the price. Full payment is not a requirement for ownership to transfer from the seller to the buyer. Unless the seller complies with the requirements of the Vehicle Certificate of Title Law and records the title with the Department of Public Safety, the title is not perfected. The seller is then prohibited from seizing the vehicle from a buyer who is in default. A buyer may not waive his right to judicial process.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________________ Isabel Wingerter Assistant Attorney General
Date Released: April 11, 2003
[1] Vercher v. Toda Enterprises, Inc., 216 So.2d 318, (La.App. 3rdCir. 1968).
[2] Biggs v. Prewitt, Jr. et.al, 669 So.2d 441, 443, 95-0315 (La.App. 1stCir. 10/6/95) citing Sherman v. State Farm Mut. Auto Ins. Co.,413 So.2d 644 (La.App. 1stCir.), writ denied 414 So.2d 776 (La. 1982).
[3] Theriac v. McKeever 405 So.2d 354, 356 (2nd Cir. 1981)
[4] Scott v Continental Ins. Co., 259 So.2d 391 (La.App. 2ndCir. 1972)Talley v. Huges, 481 So.2d 644 (La.App. 1stCir. 1982) writ denied414 So.2d 776 (La. 1982). See also Biggs v. Prewitt 95-0315 (La.App. 1stCir. 10/6/95), 669 So.2d 441 and Johnson v. White et al 693 So.2d 1223, (La.App. 2ndCir. 5/7/97)
[5] LSA-R.S. 6:969.1 et seq.
[6] Briggs v. Prewitt, 669 So.2d 441, 95-0315 (La.App. 1 Cir. 10/6/95)
[7] Vercher v. Toda Enterprises, Inc., 216 So.2d 318, 319 (La.App. 3rd Cir. 1968) citing Tolbird v. Cooper, 136 So.2d 83 (La.App. 3rd Cir.)
[8] Chrysler Financial Company, L.L.C. v. Cloutier, 785 So.2d 255,258, 2000-795 (La.App. 3 Cir.5/2/01), 798 So.2d 972 (writ denied) (La 2001 Oct 5, 2001-C-1861)
[9] LSA-R.S. 32:710
[10] Hyster v. Reeves, 541 So.2d 363 (La.App. 2Cir, 1989).